IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 2:08-cr-211-MEF |
| | ) | |
| WILFRED D. HARRIS | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the court are Defendant's *Motion to Dismiss Indictment* (Doc. 23) and the Government's *Response* (Doc. 29). After careful consideration of the arguments presented in the pleadings, the text and purpose of the Sex Offender Registration and Notification Act ("SORNA"), and decisions interpreting that statute, the undersigned recommends the District Court DENY Defendant's motion.

## I. FACTUAL BACKGROUND

The relevant facts are not in dispute. In early 1999, Defendant Wilfred D. Harris ("Harris") was convicted of Attempted Criminal Sexual Conduct 3rd Degree in case number M98-2408-FH, in the 41st Judicial Circuit Court, Menominee County, Michigan.[1] Harris served all of a five year sentence. Upon release from imprisonment, Harris was aware of the requirement that pursuant to the Michigan Sex Offenders Registration Act (SORA) he must register as a convicted sex offender in the State of Michigan and any state to which he may

---

[1] Defendant's *Motion to Dismiss* states he was convicted on February 4, 1999 (Doc. 23, at 31), while the United States's *Response* dates the conviction on January 18, 1999 (Doc. 29, at 1).

relocate.  MICH. COMP. LAWS §§ 28.721 *et seq.*  "SORA requires an individual who is convicted of a listed offense after October 1, 1995, to register as a sex offender." *People v. Althoff*, 280 Mich. App. 524, 529, 760 N.W.2d 764, 767 (2008).  Under SORA, Harris was also required to notify Michigan authorities "not later than ten days before he or she changes his domicile or residence to another state," and "promptly notify . . . any applicable sex or child offender registration authority in the new state."  MICH. COMP. LAWS § 28.725(4).

Harris moved to Coffee County, Alabama in February or March 2008, and did not register as a sex offender in Alabama.  On November 19, 2008, Harris was indicted in this Court for violating 18 U.S.C. § 2250(a).  The indictment alleges that (1) Harris, a person required to register under the Sex Offender Registration and Notification Act, (2) traveled in interstate commerce, and (3) did not register in Alabama and update his Michigan registration as a sex offender in violation of the Sex Offender Registration Notification Act ("SORNA" or "the Act," 42 U.S.C. §§ 16901 *et seq.*).  (Doc. 1).  Harris was arraigned on the indictment on January 7, 2009, and entered a plea of not guilty.  (Doc. 9).  A review of SORNA is essential to the analysis of Harris' motion.

## II. SORNA

Enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"),[2] SORNA establishes a comprehensive national system for the registration of sex offenders and offenders against children. 42 U.S.C. §§ 16901, *et seq.*  The

---

[2]        Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006), effective July 27, 2006.

Act defines "sex offender" as "an individual who was convicted of a sex offense," places offenders in three tiers according to the underlying conduct of their offense (42 U.S.C. § 16911(1)-(4)), and mandates that all states and United States territories maintain a sex offender registry with specified information concerning each offender (42 U.S.C. § § 16912(a), 16914). SORNA requires each state to maintain a jurisdiction-wide sex offender registry and directs the Attorney General to "issue guidelines and regulations to interpret and implement" its provisions.   42 U.S.C. § 16912(b).   SORNA directs jurisdictions to completely implement SORNA before July 27, 2009, or one year from the date statutorily mandated software is available, whichever is later.  42 U.S.C. § 16924.

The substantive registration requirement in section 16913 provides "a sex offender shall register, and keep the registration current, in each jurisdiction where the offender [resides, is employed, or is a student]." 42 U.S.C. § 16913(a).  Initial registration is required "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement," or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment."   42 U.S.C. § 16913(b).  Offenders must appear in person to report any changes in their registration information not later than 3 business days after each change of name, residence, employment, or student status.  The jurisdiction receiving the updated information must immediately provide the information to all other jurisdictions in which the offender must register.  42 U.S.C. § 16913(c).

SORNA specifically vests in the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted *before July 27, 2006 or its implementation in a particular jurisdiction*, and to prescribe rules for the registration" of sex offenders who are unable to comply with the initial registration requirements. *See* 42 U.S.C. § 16913(d) (emphasis added) (referencing 42 U.S.C. § 16913(b), applicable to offenders sentenced or released from prison after the Act's effective date.). The statute sets forth the information to be collected by jurisdictions, the duration of registration for the three tiers of offenders, and the schedules for in person verification. 42 U.S.C. §§ 16914-16916. Section 16917 imposes a duty on an "appropriate official" to notify sex offenders of registration requirements upon their release from custody or upon sentencing, and instructs the Attorney General to "prescribe rules for the notification of sex offenders who cannot register in accordance with subsection (a)." 42 U.S.C. § 16917. In this way, section 16917 parallels section 16913 by entrusting the Attorney General with the task to determine how to implement SORNA for previously convicted sex offenders who have completed their sentences for the SORNA-qualifying offense.

The Attorney General met his SORNA-assigned rulemaking duties in three publications: (1) a February 28, 2007, Interim Rule on the Applicability of the SORNA, 72 Fed. Reg. 8894 (2007) (the "Interim Rule"); (2) Proposed Guidelines for SORNA, 72 Fed. Reg. 30210 (2007) (the "Proposed Guidelines"); and (3) Final Guidelines for SORNA, 73 Fed. Reg. 38030 (2008) (the "Final Guidelines"). The February 28, 2007 Interim Rule made

the registration requirements in SORNA retroactively applicable to sex offenders convicted prior to its date of enactment.  *United States v. Madera*, 528 F.3d 852, 857 (11th Cir. 2008); *United States v. Dumont*, 555 F.3d 1288, 1290 (11th Cir. 2009).

Finally, section 141 of SORNA amends  Title 18, United States Code to create "a new federal crime for those individuals who fail to register, or to keep their registration current, despite being required to do so." *Madera*, 528 F.3d at 855.  Codified at 18 U.S.C. § 2250(a), this offense carries a penalty of up to ten years imprisonment, and is the actual offense charged against Harris in this indictment.  Section 2250(a) provides:

> (a) In general. - Whoever - (1) is required to register under the Sex Offender Registration and Notification Act; (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, . . ., and (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

### III. DISCUSSION

On March 3, 2009, Harris filed a *Motion to Dismiss Indictment* (Doc. 23).  The motion raises several grounds for dismissal - (1) that SORNA's registration requirement is an invalid exercise of Congressional power under the commerce clause; (2) the criminal component of SORNA (§ 2250(a)) violates the commerce clause by punishing intrastate activity which does not substantially affect interstate commerce (Doc. 23, at 8-31); (3) SORNA is not applicable to Harris because Alabama has yet to implement SORNA, and its application to him violates

the *ex post facto* clause and due process (Doc. 23, at 31-36); (4) Harris has no duty to register under SORNA because he has not received any notice of such a requirement (Doc. 23, at 37-40); (5) Congress improperly delegated the legislative function of determining the retroactivity of SORNA (Doc. 23, at 40-42); and (6) the Attorney General's regulation which applied SORNA to persons convicted before its date of enactment violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.  (Doc. 23, at 42-45).

Three days after Harris filed his motion, the Court of Appeals for the Eleventh Circuit issued a decision in *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009), which directly addresses some of the issues raised by Harris.  Recognizing *Ambert* as the authoritative decision it is, and in the interest of judicial economy, Harris waived a hearing on his motion. (Doc. 31).  *Ambert* upheld the SORNA's validity under the commerce clause on three separate grounds argued by Harris - (1) the registration requirement in §16913 is "reasonably adapted to the attainment of a legitimate end under the commerce clause;" (2) section 2250 is a valid regulation of "both the use of channels of interstate commerce and the instrumentalities of interstate commerce;" and (3) SORNA "does not contain a federal enforcement provision against individuals who fail to register locally," but only punishes sex offenders "if they 'travel in interstate or foreign commerce' *and* fail to register under § 16913." *Id.* at 1210, 1212 (emphasis in original).

Another issue raised by Harris and precisely addressed in *Ambert* is, whether the SORNA violates the non-delegation doctrine, or, whether Congress improperly transferred

its power to the Executive Branch. *Ambert* held the statute set forth sufficient intelligible principles to guide the Attorney General's discretion in the enforcement of the SORNA. *Id*. at 1212-14. A discussion of the remaining grounds for dismissal argued by Harris follows.

A.     <u>**SORNA is Applicable to Harris**</u>

Harris argues SORNA does not apply to him because he is "unable" to comply with SORNA for two reasons: (1) his registration under section 16913(b) was an impossibility because Alabama has not implemented SORNA, and (2) the Attorney General did not issue regulations requiring compliance with SORNA where a conviction occurred before SORNA's implementation in a particular jurisdiction. The Court notes at the outset it was impossible for Harris to comply with the initial registration provisions under section 16913(b) upon his release from prison because his release preceded SORNA's enactment in 2006. *See* Proposed Guidelines, 72 Fed. Reg. 30210, 30228. Hence, judicial analysis of applicability must turn upon section 16913(d), governing initial registration of sex offenders who cannot comply with subsection (b).

A key factor to determine whether Harris is subject to SORNA is the Congressional authorization for the Attorney General to "specify the applicability of SORNA to those sex offenders convicted *before July 27, 2006 or its implementation in a particular jurisdiction*."[3] 42 U.S.C. §16913(d); *see also Madera*, 528 F.3d at 856. Clearly, the statutory text assigns to the Attorney General, through the Department of Justice, the power to determine the issue

_____

[3]     SORNA's definition of "jurisdiction" includes a state, such as Alabama. 42 U.S.C. § 16911(10)(A).

of SORNA coverage raised by Harris - if and how SORNA should apply in jurisdictions which have not implemented a SORNA-compliant registry.  The Interim Rule specified "SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness.  They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders . . . ."  72 Fed. Red. 8894, 8895.  In discussing enforcement mechanisms for SORNA, the Attorney General acknowledged the role to be played by federal corrections officials and those of non-federal jurisdictions, *i.e.*, jurisdictions such as Alabama.  *Id*.  ("The second broad aspect of SORNA is incorporation by non-federal jurisdictions of the SORNA standards in their own sex offender registration and notification programs.").

Thus, Harris' initial registration under SORNA, as one convicted of a sex offense in 1999 and living in Alabama prior to its implementation of SORNA, is governed by the rules established by the Attorney General pursuant to the authority conferred by section 16913(d).  SORNA applies to sex offenders convicted prior to its enactment.  *Madera*, 528 F.3d at 857 (citing Interim Rule, 72 Fed. Red. at 8896).  The Proposed Guidelines make clear  a jurisdiction may implement SORNA without enacting a state statute.  Absent a local statute adopting SORNA, the Attorney General will look to the "totality of a jurisdiction's rules governing the operation of its registration and notification program . . . including administrative policies and procedures as well as statutes."  72 Fed. Reg. 30210 at 30213.  The Proposed Guidelines contemplate a "substantial" compliance standard under which a

jurisdiction's implementation efforts need not "exactly follow in all respects the specifications of SORNA or these Guidelines." *Id*. at 30214.  Taken together, these authorities confirm SORNA applies to Harris, even if Alabama lacks a SORNA compliant registry, with all the information specified in section 16914.

The Court holds that the reach of SORNA, as set forth in section 16913(a), does not depend upon implemented registration procedures, but rather on the text itself. *See United States v. Shenandoah*, 572 F.Supp.2d 566, 578-79 (M.D. Pa. 2008) (following cited cases to find jurisdictional implementation of a registry was unrelated to an offender's responsibilities under SORNA); *United States v. Waybright*, 561 F.Supp.2d 1154, 1172 (D. Mont. 2008) ("Section 16913(a) makes SORNA's registration requirements applicable to all sex offenders regardless of whether the Act has been implemented in a particular jurisdiction."); *United States v. Utesch*, 2008 WL 656066, *8 (E.D. Tenn. 2008) ("The fact that the states have not yet met their obligations under SORNA . . . is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act.").  The Court finds these constructions of SORNA are consistent with the statutory text, and buttressed by the Attorney General's rules which incorporate a standard of substantial compliance accomplished through state registries.  Harris' argument that Alabama has not implemented SORNA has no impact on his duty to register.

**B.**     **SORNA Does Not Violate the *Ex Post Facto* Clause**

The *Ex Post Facto* clause "forbids the Congress and the States to enact any law

'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). *Weaver* distills two elements to determine if a law is *ex post facto* - (1) retroactive application, *i.e.*, "it must apply to events occurring before its enactment," and (2) "it must disadvantage the offender affected by it." *Id*. at 29, 101 S.Ct. at 964. Harris' *ex post facto* claim disputes that the registration requirement of SORNA applies to him, and that, until the offender-registration scheme is fully implemented by the State of Alabama, prosecution under SORNA subjects him to punishment "for an act which was not punishable at the time it was committed." (Doc. 23, at 35.)

The Eleventh Circuit overruled the same *ex post facto* argument against SORNA in *United States v. Dumont*, 555 F.3d 1288 (11th Cir. 2009). *Dumont* followed *Madera* in holding that SORNA became retroactively applicable to previously convicted sex offenders on February 28, 2007, when the Attorney General made his retroactivity determination. *Dumont*, 555 F.3d at 1291. The retroactive nature of SORNA is distinct from the retroactive element in *ex post facto* situations. The *ex post facto* bar rises when a criminal statute applies to conduct which precedes the enactment of the statute irrespective of whether the conduct continues past the enactment of the statute. In other words, Congress cannot make criminal today conduct which is purely historical from yesterday. Section 2250(a) is not being applied in a retroactive manner to Harris because his actions (1) traveling in interstate commerce in

2008, and (2) failing to register or update a registration, both occurred after SORNA's

passage.  *See also Ambert*, 561 F.3d at 1207-08 (same).  The Court finds neither the conduct

at issue nor the statute itself triggers the *ex post facto* clause.

**C.**  **SORNA Does Not Violate the Due Process Clause**

Harris advances two arguments that SORNA, as applied to him, violates the Fifth

Amendment due process clause.  First, he argues that Alabama's failure to implement

SORNA registration and notification requirements renders him "unable" to register in

compliance with 18 U.S.C. § 2250.  Ergo, Harris argues the indictment constitutes

"[c]riminalizing the failure to do something that is impossible to do."  (Doc. 23, at 36).

Second, Harris argues that "SORNA explicitly directs the Attorney General to prescribe

regulations to notify" sex offenders whose convictions predate SORNA and who are no

longer in custody or awaiting sentencing on those offenses.  (Doc. 23, at 37, citing 42 U.S.C.

§ 16917(b)).  Harris contends that he was not notified of SORNA or its requirements, and

his prosecution thereunder violates due process.  (Doc. 23, at 38).

*1.*    *To Subject Harris to SORNA Does Not Offend The Due Process Clause*

Harris makes a due process argument that he could not comply with the SORNA

registration and notification requirements prior to its implementation, and thus could not

violate 18 U.S.C. § 2250.  As set forth in Part II.A., above, the Attorney General recognizes

the integral role of state registries for SORNA implementation notwithstanding the lack of

a formal process to adopt SORNA by individual states.

Harris was fully able to register as a sex offender in Alabama, and in so doing, to satisfy the registration requirements currently applicable to him under Alabama law and SORNA.  Consequently, the argument that Harris could not comply with SORNA via registration in Alabama fails.  Harris' status as one previously convicted of a sex offense, who engaged in interstate travel, established residence in Alabama, and who failed to register as a sex offender *despite having been made aware of the requirement that he do so* satisfies the elements necessary for conviction under section 2250.  *United States v. Baccam*, ___ F.3d ___, 2009 WL 1119326, *2 (8th Cir. April 28, 2009); *United States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008);*United States v. Lawrance*, 548 F.3d 1329, 1338 (10th Cir. 2008).

> 2.    *Harris' Knowledge of His Duty to Register Satisfies the Requirements of Due Process*

Harris argues he cannot be prosecuted under section 2250 absent notice from the Attorney General of his duty to register.  42 U.S.C. § 16917.  Section 16917, like section 16913, grants the Attorney General the power to prescribe rules for the notification of offenders who were not aware of SORNA prior to release from prison or upon sentencing. The Court again notes the uncontested fact that Harris knew he must register under state law if he moved to another jurisdiction.

Harris compares his failure to register as a sex offender to the facts in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1958), where the Supreme Court struck down a municipal ordinance which required any person convicted of a felony under

California law to inform city officials if they remained in the city for more than five days in any one 30-day period.  Finding notice essential to the criminalization of "conduct that is wholly passive - mere failure to register," the Court struck down the ordinance.  *Id*. at 228, 78 S.Ct. at 243.  In *Lambert*, the Court reasoned "[W]here a person did not know of the duty to register and where there was not proof of the probability of such knowledge, he many not be convicted consistently with due process."  *Id*. at 229-30, 78 S.Ct. at 243-44.

The apparent distinction between *Lambert* and this case is actual, post-SORNA notice to Harris that he **must** register his presence in any state in which he resides.  In fact, Harris' actions fit the formula set out by the Supreme Court in *Lambert* - "that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand."  *Id*. at 229, 78 S.Ct. at 243.  Several other courts have rejected due process arguments raised under *Lambert*, and this court follows, particularly since Harris knew he had a duty to register as a sex offender wherever he resides within the United States.  *See United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008); *United States v. Hinckley*, 550 F.3d 926, 939 (10th Cir. 2008) (noting SORNA does not require statutory implementation by a state); *Waybright*, 561 F.Supp.2d at 1173-74.

Harris' knowledge of his duty to register also forecloses his argument that  the lack of such notice voids any prosecution under section 2250.  He contends the regulations issued by the Department of Justice require sex offenders receive specific notice of SORNA.  The

lack of SORNA-specific notice to Harris does not impede the statute's application, as he urges, because the Due Process Claus was satisfied by his knowledge of a duty to register under state law. *Baccam*, ___ F.3d ___, 2009 WL 1119326; *Dixon*, 551 F.3d 578. Harris' reading of the notice provision ignores the Department's recognition that complete SORNA registration is not an immediate possibility, but will occur only in phases, *i.e.*, as sex offenders maintain the required contacts already implemented through well-established state laws. Harris is therefore subject to SORNA's coverage in light of his knowledge of his duty to register his whereabouts with state officials.

After careful examination of the statutory text and court decisions addressing this issue, the Court finds Harris knew he had to update his registration and did not do so. Therefore, indictment under section 2250 is appropriate.

### D.   The Attorney General's Guidelines Did Not Violate the Administrative Procedures Act (APA)

Harris argues the retroactive application of SORNA to all sex offenders with convictions predating the statute violates the APA. 5 U.S.C. § 553. Ordinarily, the APA requires an agency to give public notice of a proposed regulation at least thirty days before its effective date and solicit comment from the public. 5 U.S.C. § 553(b)-(c). Section 553(d)(3) provides a "good cause" exception to this requirement where the agency finds such cause and explains the grounds therefore in the rule. 5 U.S.C. § 553(d)(3).

The Attorney General provided good cause for immediate implementation in accordance with section 553(d)(3). The publication of the rule was accompanied by a

statement explaining

> [T]he immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements-and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required-to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed.Reg. 39, 8894, 8896-8897 (2007); *see also United States v. Dean*, ___ F.Supp.2d ___, 2008 WL 596547, at *10-11 (M.D. Ala. March 6, 2009); *United States v. David*, 2008 WL 2045827 (W.D.N.C. 2008).

The urgent nature of protecting the public from sex offenders supports the immediate effective date of the SORNA regulations.[4]  Any delay in SORNA's implementation would run counter to its stated purpose, and the Attorney General complied with the APA by showing good cause for his decision.

---

[4]     The Court notes immediate registration by offenders does not work a hardship because all states had enacted some form of sex offender registration law prior to the passage of SORNA. *See Waybright*, 561 F.Supp.2d at 1159 n.3.

## IV. CONCLUSION

For the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's *Motion to Dismiss Indictment* (Doc. 23) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation by **May 21, 2009.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 8th day of May, 2009.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE